EXHIBIT A

FILED
11th JUDICIAL DISTRICT COURT
McKinley County
10/7/2024 12:47 PM
JODIE SCHWEBEL
CLERK OF THE COURT
Valarie Baretinicich

STATE OF NEW MEXICO
MCKINLEY COUNTY
ELEVENTH JUDICIAL DISTRICT COURT

VERONICA KENNY,

          Plaintiff,

    v.

IFINANCE LLC,
OKINUS, INC.

        Defendants.

No. _____D-1113-CV-2024-00514_____

Decker, Douglas W.

## COMPLAINT FOR DAMAGES

1. Defendants use outright lies and deception to trap consumers into expensive credit agreements to purchase furniture and household goods.

2. Defendant iFinance LLC prohibited Plaintiff Vernonica Kenny from paying in full and in cash for new furniture. Instead, it required her to purchase the goods through a bogus rent-to-own agreement, which was really a loan in disguise financed by Defendant Okinus, Inc. The resulting contract ensnared Ms. Kenny in a long-term financial obligation that cost *five times* the advertised price of the merchandise.

3. Defendants hid this from Ms. Kenny by forging her signature on a rent to own agreement and delivering it to an email address that *they created* for her.

4. Defendants then delivered the furniture to Ms. Kenny infested with bed bugs and refused to let her return it and cancel the contract.

5. Ms. Kenny seeks relief for Defendants' fraud, conversion and unjust enrichment and for violations of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the federal Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, the New Mexico Unfair Practices Act ("UPA"), NMSA § 57-12-1 *et seq.*, the New Mexico Retail Installment Sales Act ("RISA"), NMSA § 56-1-1 *et seq.*, the New Mexico Small Loan

1

EXHIBIT A

Act ("SLA"), NMSA 1978, § 58-15-1 *et seq.*, and the New Mexico Rental Purchase
Agreement Act, NMSA 1978, § 57-26-1 *et seq.*

## Parties

6.  Plaintiff Veronica Kenny is a resident of Crownpoint, New Mexico. In this transaction,
    Ms. Kenny was a "consumer," as defined by the Electronic Signatures in Global and
    National Commerce Act ("E-Sign"), 15 U.S.C. § 7006 (1). Ms. Kenny is a "consumer" as
    defined by the TILA, 15 U.S.C. § 1602(i) and Regulation Z, 12 C.F.R. § 1026.2(a)(11).
    Ms. Kenny is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6).

7.  Ms. Kenny entered into the transaction at issue in this lawsuit for personal, family or
    household purposes. The transaction was a "credit sale" as defined by the TILA, 15 U.S.C
    § 1602(g).

8.  Defendant iFinance is a domestic limited liability corporation with storefronts in Gallup,
    New Mexico and Grants, New Mexico. It sells and finances furniture, appliances,
    electronics, mattresses and tires.

9.  Defendant Okinus, Inc. is incorporated in Georgia and offers financing for furniture,
    electronic and appliance retailers, which it denotes as a purported "lease to own" products
    for consumers. Okinus is not registered to do business in New Mexico.

10. Okinus finances the goods sold at iFinance.

11. iFinance and Okinus are each a "creditor" as defined in the TILA, 15 U.S.C. § 1602(g),
    and Regulation Z, 12 C.F.R § 1026.2(a)(17).

12. Neither iFinance nor Okinus possess a New Mexico small loan license pursuant to the
    SLA, NMSA § 58-15-3.

13. The transactions described herein were made in the regular course of iFinance and Okinus' trade or commerce.

14. iFinance and Okinus operated as agents of one another and are vicariously liable for the actions of each other and of their employees, agents, apparent agents of contractors.

15. The two entities authorized, participated in and ratified each other's and their employees' misconduct.

**Facts**

16. Ms. Kenny is 68 years old and lives alone in Crownpoint, New Mexico.

17. Ms. Kenny worked as a nursing aid, but she has been disabled for more than 30 years. Ms. Kenny is deaf and survives on a limited social security disability income.

18. More recently, she became blind after contracting COVID. She is unable to read.

19. Ms. Kenny primarily speaks Navajo.

20. In November 2023, she and her adult son stopped at iFinance.

21. The blankets hanging outside iFinance caught Ms. Kenny's eye.

22. Once inside, Ms. Kenny saw a three-piece couch set advertised as being sold for a sale price of $900.

23. iFinance was also selling a wood stove for $300.

24. Ms. Kenny sought to purchase these items and pay in full and in cash.

25. Okinus, through iFinance, (hereinafter collectively referred to as Defendants) told Ms. Kenny that cash is not accepted and that she must finance the sale.

26. Ms. Kenny left the store.

27. Defendants approached Ms. Kenny in her car and coaxed her back into the store.



28. Ms. Kenny, again, stated that she did not want to pay interest or finance charges and wanted to buy the items out right.

29. Defendants promised her that, if she financed the purchase but paid it off in three months, she would not owe any interest or finance charges.

30. Ms. Kenny planned to return to the store within three months to pay in full for the furniture. Defendants permitted Ms. Kenny to believe that paying at iFinance in the next three months was permitted, even though they knew this was a misrepresentation.

31. Based on Defendants' representations and material omissions, Ms. Kenny agreed to purchase the furniture on those terms.

32. Defendants told Ms. Kenny she needed to pay $5 in cash that day, which she did.

33. Defendants simply pocketed this $5 and did not apply the $5 to Ms. Kenny's purchase.

34. Defendants electronically prepared paperwork for the transaction.

35. Ms. Kenny told Defendants that she does not own a computer. Ms. Kenny did not have an e-mail account, an e-mail address and did not access e-mail on her a smart phone.

36. Ms. Kenny cannot read text on her phone.

37. Defendants failed to obtain Ms. Kenny's consent to receive records electronically, because she told them that she does not own a computer, she did not have an e-mail address and she did not demonstrate that she had access to the equipment and programs necessary to receive, open and retain electronic contract documents and disclosures. 15 U.S.C. § 7001(c)(1)(A, C).

38. Defendants failed to provide Ms. Kenny with a clear and conspicuous statement her right to have the contract made available in nonelectronic form, and her other options and rights, as set forth in 15 U.S.C. § 7001(c)(1)(B).

4

EXHIBIT A

39. Ms. Kenny did not agree to conduct business electronically.

40. Undeterred, Defendants created an email address for Ms. Kenny and Defendants used the e-mail address to access the agreement and forge Ms. Kenny's signature on it.

41. Defendants did not review any contract with Ms. Kenny, either electronically or with a paper copy. Defendants did not show, or explain, the contract or any documents to Ms. Kenny.

42. Defendants intentionally misled Ms. Kenny into believing that she entered into a standard credit transaction, in the form of a 90-day interest-free loan, for the purchase of a new furniture set and stove for the price of $1,200.

**Defendants Forge Ms. Kenny's Signature on a Contract that is Wildly Different From the Deal that Defendants Said She was Entering Into**

43. Unbeknownst to Ms. Kenny, Defendants forged her signature on a rent to own agreement and then "delivered" it to an e-mail address that they created for Ms. Kenny. Defendants created the e-mail account for Ms. Kenny for the specific purpose of using it to apply her electronic signature to the transaction documents as well as to "deliver" the documents to her in a way that would, in realty, be hidden from her.

44. Only much later, through counsel, did Ms. Kenny obtain the rent of own agreement.

45. Ms. Kenny learned that Defendants' rent to own contract stated that the price of the furniture set was $1,499 – *not* the $900 sale price that Defendants advertised and discussed with Ms. Kenny.

46. As such, the total price of the furniture set and the stove was $1,799 and not the $1,200 sales price that Defendants represented to Ms. Kenny.

47. Nowhere in the contract was Ms. Kenny credited for her $5 payment.

EXHIBIT A

48. Ms. Kenny also learned that Defendants hid from Ms. Kenny that the transaction was a two-year "rent-to-own" agreement, where the "cost of renting the furniture" was $3,509.12 and total cost to own the furniture, including the "rental cost," was $5,308.12.

49. Unbeknownst to Ms. Kenny, to pay in full for the furniture and stove in three months, she would have had to pay nearly $2,000, which consisted of the $1,799 sales price plus fees and taxes.

50. No one told Ms. Kenny the true cost of the furniture and stove.

51. No one told Ms. Kenny that Defendants considered the transaction a lease. She did not understand it to be a lease.

52. No one told Ms. Kenny that the transaction did *not* provide an option to pay for the furniture in full in three months to avoid any finance charge.

53. No one told Ms. Kenny that she would be required to pay **five times** the cost of the furniture and stove to own it at the end of the lease term.

54. Defendants deliberately hid from Ms. Kenny that they were using her electronic signature to enter into a rent to own agreement.

**Defendants' Deceptively Try to Skirt Lending Laws**

55. In reality, Ms. Kenny's transaction with Defendants was an extension of credit for the purchase of goods, pursuant to the Truth in Lending Act, 15 U.S.C. § 1602(f), (h), and not a lease.

56. Disguising the transaction as a lease gave Defendants a justification to hide the disclosures required by the TILA to be "clearly and conspicuously" on the face of the loan contract, 15 U.S.C. § 1632(a), and to be provided to the borrower at the time of consummation in a form she could keep, 12 C.F.R. § 1026.17.

6

EXHIBIT A

57. These disclosures should have included the Finance Charge, 15 U.S.C. § 1638(a)(3), Annual Percentage Rate, 15 U.S.C. § 1638(a)(4), and so forth.

58. Had Defendants made the required disclosures, the face of the contract would have disclosed that its loan of $1,799 bore an extremely exorbitant APR of nearly 145 percent.

59. Defendants also failed to comply with New Mexico's substantive lending laws. *See* Retail Installment Sales Act (RISA), NMSA 1978, § 56-1-1 *et seq*.

60. Ms. Kenny's transaction with Defendants constituted a "retail installment transaction," and the rent to own contract constituted a "retail installment contract," pursuant to the RISA, NMSA 1978, § 56-1-1(G) and (H).

61. As such, the contract was required to comply with NMSA 1978, § 56-1-2, requiring, among other things, designation as a "retail installment contract;" disclosure of the "time-price differential" (i.e., the finance charge); and statement of the cash sale price of the goods and services.

62. Defendants' rent to own contract, in efforts to disguise the true nature, failed to include these and other required terms under the RISA.

63. In addition to violating the RISA, under New Mexico's SLA, Defendants were required to make a variety of disclosures, including the annual interest rate, NMSA 1978, § 58-15-17; to use the simple interest method, NMSA 1978, § 58-15-14.1; and not to impose prepayment penalties, NMSA 1978, § 58-15-15.1. Defendants are prohibited from making loans with an APR of more than 36 percent. NMSA 1978, § 58-15-17.

64. Defendants' rent to own agreement failed to comply with these requirements of the SLA.

65. Defendants are lenders, and their transactions are structured to evade the requirements of the SLA.

**Defendants Violate New Mexico's Rental Purchase Agreement Act**

66. Finally, Defendants' rent to own agreement did not even comply with New Mexico's Rental Purchase Agreement Act's requirements, because the agreement was not signed by, and delivered to, Ms. Kenny, and the required disclosures were either not made or not made prior to the transaction. NMSA 1978, §§ 57-26-4, 5.

67. Defendants' advertisements fail to clearly and conspicuously state that their transactions are rental purchase agreements. NMSA 1978, § 57-26-10.

68. The rent-to-own agreement contains prohibited provisions, including an arbitration provision. NMSA 1978, § 57-26-6.

69. The unlawful arbitration provision also requires that consumers bring their claims in arbitration, rather in court, but explicitly allows Defendants to sue in court to recover the goods or obtain a money judgment against consumers – illegally carving out Defendants' claims from arbitration.

70. Ms. Kenny was unaware of these violations of the law, just as she was unaware that the transaction was deceptively identified as a lease, and she was unaware of the true cost of the loan.

71. Had Ms. Kenny known the truth, she would not have entered into the transaction with Defendants.

**Defendants Illegally Condition the Sale on Automatic Withdrawals –
And Intentionally Hide this from Ms. Kenny**

72. Unbeknownst to Ms. Kenny, the transaction required $236.06 monthly payments to be automatically deducted from her checking account. Each payment included $14.93 in sales tax.

73. Defendants obtained Ms. Kenny's checking account information on false pretenses.



74. Defendants hid from Ms. Kenny that they used her checking account information to establish "electronic fund transfers." Or, in other words, automatic payments or withdrawals from her checking account.

75. Defendants require that payments on its "leases" are deducted from customers' checking accounts. *See* iFinance, Support/FAQs – IfinanceWeb (ifinanceusa.com) (last accessed on September 9, 2024) ("All the application requires is an active checking account … payments are made automatically by ACH, which automatically processes from your bank account."

76. The Electronic Funds Transfer Act (EFTA) absolutely prohibits the conditioning of the extension of credit on repayment by preauthorized electronic funds transfer. 15 U.S.C. § 1693(k).

77. Mr. Kenny's checking account was an "account" as defined in the EFTA, 15 U.S.C. § 1693a(6).

78. Ms. Kenny's checking account was at First Financial Credit Union, which is a "financial institution" as defined by the EFTA, 15 U.S.C. § 1693a(9).

79. Defendants' withdrawals from Ms. Kenny's checking account were "electronic fund transfers" as defined by the EFTA, 15 U.S.C. § 1693a(7).

80. Defendants intentionally – and illegally – require payment by electronic fund transfers – to make it harder for consumers to distance themselves from these deceptive rent-to-own agreements.

**Defendants Steal Ms. Kenny's Money**

81. In early December, Ms. Kenny was shocked to discover money missing from her checking account.

EXHIBIT A

82. Her bank informed her that Okinus withdrew $236.06. This was the first time she had heard the name Okinus.

83. She called Okinus to complain about the automatic withdraw.

84. Okinus directed her to iFinance.

85. Ms. Kenny went to iFinance to inquire about the withdrawal.

86. iFinance refused to talk to her, directing her back to Okinus.

87. Defendants had not even delivered the furniture yet, and Ms. Kenny did not know why payments were being automatically withdrawn from her account when Defendants led her to believe she would make payments at iFinance's storefront.

88. Defendants continued to automatically withdraw payments for the next several months, despite Ms. Kenny's continued protests, as more fully described below.

89. Ms. Kenny closed her checking account to stop the automatic payments.

90. Because Defendants forged Ms. Kenny's signature on the contract and delivered the contract to an e-mail account that they created, Ms. Kenny did not agree to the electronic fund transfers, and Defendants simply stole her money.

**Defendants Deliver Used, Bed-Bug Infested Furniture and Obstructed its Return**

91. In mid-December, Defendants delivered the furniture to Ms. Kenny's home.

92. Ms. Kenny's home was entirely empty when Defendants delivered the items.

93. Ms. Kenny had not moved in yet as she had just obtained the home from the Navajo Nation, and it had not been dedicated yet.

94. Ms. Kenny immediately discovered bed bugs in the furniture boxes.

95. The boxes appeared to have already been opened and then re-sealed with tape.

96. She returned to iFinance to complain about the bed bugs and to return the furniture.

97. iFinance told her to come back later because it was too busy at that time.

EXHIBIT A

98. Ms. Kenny came back a week later.

99. iFinance told her to buy bed bug spray.

100.    iFinance told her it would pick the furniture set up.

101.    iFinance never picked the furniture set up.

102.    Ms. Kenny called Okinus to complain about the bed bugs and ask it for help.

103.    Okinus offered to pick up the couch.

104.    Okinus never did pick up the couch.

105.    Ms. Kenny contacted Okinus again. Okinus told her she needed to pay $3,000 in a

lump sum to it now and threatened to "ruin her credit" if she failed to make this payment.

106.    Okinus has continued to demand that Ms. Kenny pay on the loan.

107.    Okinus denied any responsibility for iFinance's fraud and misconduct in the

contract formation or regarding the condition of the goods.

108.    Okinus' actions in representing it had no liability and could not help Ms. Kenny,

and in continuing with collection on loan, once it was made aware of the fraud, are

violations of the UPA. *Jaramillo v. Gonzales*, 2002-NMCA-072, 132 N.M. 459, 50 P.3d

554 (Ct. App.s 2002); cert denied, 132 N.M. 288, 47 P.3d. 447 (May 28, 2002).

109.    Ms. Kenny was greatly upset by Defendants' dismissive treatment.

110.    Okinus negatively reports the account to the credit reporting agencies.

111.    Ms. Kenny's credit has been damaged by Okinus' negative reporting of the

account, which has lowered Ms. Kenny's credit score.

112.    Ms. Kenny has not purchased furniture for her new home as she fears being

trapped in a similarly deceptive contract.

113.    Because of Defendants' actions, inactions, misrepresentations and omissions, Ms.

Kenny has suffered actual damages, including but not limited to, being fraudulently

obligated to an illegal and unconscionable contract, payments on the contract, fees and penalties, loss of use of the couch, plus out of pocket expenses, lost time, aggravation, frustration, humiliation, mental upset and other emotional distress damages.

114.    Defendants engage in a pattern of fraud and deceit in the sale and financing of household goods.

115.    Defendants' conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith. Defendants intentionally ran a scheme designed to trick consumers into extremely high-cost loans and deprive them of their rights under the law. Upon information and belief, numerous other consumers have fallen victim to the scam. A substantial award of punitive damages is necessary to deter Defendants – and other purported rent to own operations – from continuing this misconduct.

**First Claim for Relief: Violation of the TILA**

116.    Defendants violated the TILA by failing to make any of the required disclosures for closed-end credit. 15 U.S.C. §§ 1632, 1638.

117.    Plaintiff is entitled to actual and statutory damages, plus costs and reasonable attorney fees. 15 U.S.C. §1640.

**Second Claim for Relief: Violation of the EFTA**

118.    Defendants conditioned the extension of credit upon Plaintiff's repayment by means of preauthorized electronic fund transfer, in violation of the EFTA. 15 U.S.C. §1693k.

119.    Defendants are liable as provided in 15 U.S.C. § 1693m for statutory damages plus costs and reasonable attorney fees.

**Third Claim for Relief: Violation of the UPA**

EXHIBIT A

120.   Defendants' misrepresentations and material omissions, as set forth herein, each constitute unfair or deceptive trade practices within the meaning of the UPA, NMSA 1978, § 57-12-2.

121.   Defendants' transaction with Plaintiff was also unconscionable in violation of the UPA. *Id.*

122.   Defendants willfully engaged in these unlawful trade practices.

123.   Plaintiff is entitled to recover actual or statutory damages, trebled, plus costs and reasonable attorney's fees.  NMSA 1978, § 57-12-10.

124.   Plaintiff is also entitled to an injunctive relief, including but not limited to an Order from this Court declaring that the transaction is void and unlawful and preventing Defendants from any ongoing efforts to collect on this void and unlawful loan or lease.

**Fourth Claim for Relief: Violation of the RISA**

125.   Defendants' conduct violated the RISA, as set forth above.

126.   Defendants are barred from the recovery of any time price differential, official fees, and delinquency or collection charge.  NMSA 1978, § 56-1-9.

**Fifth Claim for Relief: Violation of the SLA**

127.   Defendants' conduct violated the SLA, as set forth above.

128.   Such violation constitutes an independent violation of the UPA. NMSA 1978, § 58-15-3(G).

129.   Such violation also renders the loan void and unenforceable.  NMSA 1978, § 58-15-3(E).

**Sixth Claim for Relief: Fraud**

130.   Defendants induced Plaintiff to enter into the loan by misrepresentations and by omissions of material facts, as set forth above, including misrepresenting Plaintiff's payment



obligation, and failing to disclose that the Agreement obligated Plaintiff to repay a finance charge of nearly $3,000 at approximately 145% APR.

131.  Defendants knew such representations to be false, or they made those representations recklessly, or they had no reasonable grounds for believing those representations were true.  Defendants also knew that their omissions were material and important.

132.  Defendants intended to deceive Plaintiff and intended that she would rely upon Defendants' representations, which she did, to her detriment, suffering damages.

133.  Plaintiff is entitled to actual and punitive damages.

### Seventh Claim for Relief: Violation of the RPAA

134.  Defendants' conduct violated the RPAA, as set forth above.

135.  Plaintiff is entitled to statutory damages and attorney fees. NMSA 1978, § 57-26-11.

### Eighth Claim for Relief: Conversion

136.  Defendants' intentionally exercised dominion and control of Plaintiff's property – her $5 payment and her money in her debit account – while having no legal right to it.

137.  At all times relevant hereto, Defendants acted with malice, recklessness, and total and deliberate disregard for Plaintiff's rights.

138.  "Conversion is defined as the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Nosker v. Trinity Land Co.*, 1988-NMCA-035 ¶13-21, 107 N.M. 333, 338-339, (Ct. App.), cert. denied, 107 N.M. 267, 755 P.2d 605 (May 31, 1988); *See also Newman v. Basin Motor Co.,* 98 N.M. 39, 1982-NMCA-074 (Ct. App. 1982).

139.   Plaintiff is entitled to recover actual damages and punitive against Defendants.

140.   "The measure of damages, in conversion, is the value of the property at the time of conversion with interest." *Crosby v. Basin Motor Co.,* 1971-NMCA-127 ¶13, 83 N.M. 77, 79 (Ct. App. 1971); *Woods v. Collins*, 1975-NMCA-018 ¶ 13, 87 N.M. 370, 371 (Ct. App. 1975).

## Ninth Claim for Relief: Unjust Enrichment

141.   Defendants benefitted at the expense of Plaintiff.

142.   Allowing Defendants to retain the benefit would be unjust.

143.   Defendants' conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.

144.   Defendants should be ordered to disgorge all benefits resulting from their misconduct.

145.   Plaintiff is entitled to punitive damages.

**WHEREFORE**, Plaintiff requests that this Court grant the following relief:

A.   Award declaratory judgment that Plaintiff's transaction with Defendants is void and uncollectable;

B.   Grant injunctive relief preventing Defendants from making any efforts to collect on their loan and from reporting negative information about Plaintiff to any credit reporting agency;

C.   Award actual, statutory and/or punitive damages as set forth above;

G.   Award reasonable attorney's fees and costs; and

H.   Grant such other relief as the Court deems just and proper.

Respectfully submitted,

New Mexico Legal Aid, Inc.

EXHIBIT A

*/s/Cassie M. Fleming*
Cassie M. Fleming
P.O. Box 25486
Albuquerque, NM 87125-5486
(505) 545-8550 phone
(505) 501-7997 fax
cassief@nmlegalaid.org
Attorneys for Plaintiff

EXHIBIT A

FILED
11th JUDICIAL DISTRICT COURT
McKinley County
10/9/2024 4:05 PM
JODIE SCHWEBEL
CLERK OF THE COURT
Nohemi Morales

STATE OF NEW MEXICO
MCKINLEY COUNTY
ELEVENTH JUDICIAL DISTRICT COURT

VERONICA KENNY,

      Plaintiff,                   No. D-1113-CV-2024-00514

    v.

IFINANCE LLC,
OKINUS, INC.

      Defendants.

### DEMAND FOR JURY TRIAL

    Plaintiff does hereby demand trial by a jury of six (6) persons on all issues so triable.

Respectfully submitted,

New Mexico Legal Aid, Inc.

*/s/ Cassie M. Fleming*
Cassie M. Fleming
P.O. Box 25486
Albuquerque, NM 87125-5486
(505) 545-8550 phone
(505) 501-7997 fax
cassief@nmlegalaid.org
*Attorneys for Plaintiff*