# OKINUS

| Store: | Rent-To-Own Price Tag | Date: 11/14/2023 |
|---|---|---|
| iFinance Furniture & More<br>1100 E Aztec Ave Ste A<br>Gallup, NM 87301 | | |

| | | |
|---|---|---|
| **TOTAL OF PAYMENTS** | $5,308.12 | You must pay this amount to own the property if you make all the regular payments. You can buy property for less under the early-purchase option. |
| **COST OF RENTAL** | $3,509.12 | Amount over cash price you will pay if you make all regular payments. |
| **CASH PRICE** | $1,799.00 | Property available at this price for cash from retailers in this area. |
| **BRIEF DESCRIPTION OF PROPERTY** | [1]3PC MANUAL RECLINER SET (Sku: 3PCMRS, Unit Price: $1499, Total: $1499)[1]WOOD STOVE (GUIDE GEAR) (Sku: SSTC, Unit Price: $300, Total: $300). | new |
| **AMOUNT OF EACH PAYMENT** | $236.06 | Monthly |
| **NUMBER OF PAYMENTS** | 24 | |
| **RENTAL PERIOD** | From: 11/14/2023 | To: 11/04/2025 |

# EXHIBIT A

Customer Signature  *VERONICA KENNY*  Date  11/14/2023  Document Origin: Copy

11/14/2023 4:09 PM                                                                                                    Page: 2 of 6

| Lessor\Owner: | Lessee: | 2nd Lessee: | |
|---|---|---|---|
| Okinus Inc.<br>PO Box 691<br>Pelham, GA 31779 | VERONICA KENNY<br>298 CROSS CANYON RD DALTON PASS<br>CROWNPOINT, NM 87313 | | OKINUS |

Phone: (800) 472.1334

**Date of Lease**: 11/14/2023

# RENTAL-PURCHASE AGREEMENT

In this Agreement "you" and "your" mean the person(s) signing this Agreement as Lessee. "We", "our" and "us" mean Okinus, Inc., the Lessor\Owner. "Property" means the leased property below. "Agreement" means this Rental Purchase Agreement.

| **SUMMARY:** | | | |
|---|---|---|---|
| **Cash Price** | $1,799.00 | **Amount to be drafted from bank or card** | $236.06 |
| **Initial Payment** | $1.07 | **No. of Payments left after Initial Payment** | 24 |
| **Lease Payment Term** | Monthly | **Next Due Date:** | 12/04/2023 |

**1. Leased Property:** You are leasing the item(s) described below or on Exhibit A attached hereto (the "Property"). The Property is new Items(s): [1]3PC MANUAL RECLINER SET (Sku: 3PCMRS, Unit Price: $1499, Total: $1499)[1]WOOD STOVE (GUIDE GEAR) (Sku: SSTC, Unit Price: $300, Total: $300).

| **2. Today's Initial Payment** | | **3. Amount and Timing of Payments** | |
|---|---|---|---|
| Initial Lease Payment | $0.00 | Regular lease payment | $221.13 |
| Processing Fee | $1.00 | Sales tax | $14.93 |
| Account Verification Fee | $0.00 | Okinus Care Plus (OCP) | $0.00 |
| Delivery Fee | $0.00 | Total payment | $236.06 |
| Security Deposit (See Section 10) | $0.00 | | |
| Refundable Security Deposit (See Section 10) | $0.00 | | |
| Sales Tax | $0.07 | | |
| Okinus Care Plus (OCP) | $0.00 | | |
| Total Initial Payment | $1.07 | | |

**3.1** There is a 1 time document processing fee of $21.35 that will be assessed on your 1st Regular Payment. Including this document processing fee your total 1st regular payment will be $257.41

**Sales Tax is subject to changes in the sales tax rate**

**4. Lease Term:** Your minimum lease term is 2 lease payments (Initial Lease Term). You must make lease payments for the entire Initial Lease Term. After that you have 3 options: (1) continue using the Property by making a lease payment in advance; (2) buy the Property (see Section 7); or (3) return the Property with no further obligation except for any past due amounts you owe.

**5. Other Charges:** Late Fee: If you fail to make a renewal lease payment within 5 days after the renewal date, you must pay a late fee of $5.00; Returned Payment Fee: $30.00 If your ACH or debit/credit card payment is returned/declined for any reason, you must

# EXHIBIT A

| Customer Signature | *VERONICA KENNY* | Date | 11/14/2023 | Document Origin: Copy |
|---|---|---|---|---|

pay this fee; Account Verification Fee: $0.00 This fee is for confirming your debit card is valid; Processing Fee: $1.07 This fee is for reviewing your application and setting up your lease file; Recording Fee: $0.00 This fee is for filing all necessary forms required to record your lease among the county deed records. Document Request Fee: $5 If you request documentation from Okinus via regular mail this fee must be paid in advance. We will email you any documentation you request for free.

**6. Total Cost:** If you lease the Property for 24 lease payment terms in a row, you will pay a total of $5,308.12, which includes your initial payment, all rental payments, the amount of your Refundable Security Deposit, and your Cost Reducing Deposit if any, but not including taxes or other charges. You do not obtain any ownership interest in the Property unless you pay the Total Cost or exercise your Early Purchase Option (see Section 7).

**7. Early purchase option (EPO):** You have the option to purchase the Property during the term of this Agreement as specified in this Section 7.

1. Your option period begins on the date of this Agreement. You must make timely lease payments during this period or your EPOs may be voided. Your EPO(s) are as follows:
2. During the first 110 days of this Agreement by paying $1,799.00, plus $49.95 (110 day buyout fee) less lease payments you have made (not including any taxes or fees), plus tax.
3. You may buy the Property at any time after the EPO time periods provided above. Your EPO price for the Property will be 75.00% of the amount of the remaining lease payments, plus the amount in your Security Deposit account (if any), plus any past due amounts that you owe us, plus any taxes or fees.

**8. Risk of Loss:** You are liable for the loss, damage or destruction of the Property from all causes. You are liable for the fair market value of the property on the date of loss.

**9. Maintenance, Repairs and Warranty:** You are responsible for maintaining the Property in good working condition during the lease term. We will not be responsible for the costs or the results of any repairs or damage caused by improper use. You must notify us immediately if the Property breaks and send us written records of any repairs. We will assist you if any maintenance or service required on the Property is covered by a manufacturer's warranty. If any part of a manufacturer's warranty, or third-party warranty, covers the Property at the time you acquire ownership, the warranty will be transferred to you, if allowed by the terms of the warranty. **To the extent permitted by law, we do not provide any Warranty of Merchantability or Fitness for a Particular Purpose, either Express or Implied, on the Property. You are renting the Property, "as is" and "with all faults".**

**10. Deposit:** This Agreement may require that a Refundable Security Deposit ("RSD") be paid at time of lease inception. The purpose of the RSD is to cover the expenses of any repairs or damages to the Property should you return the Property in a condition that is beyond normal wear and tear. At the inception of this agreement, you may also have paid a Cost Reducing Deposit ("CRD") to reduce the amount of your lease payments and the Total Cost, should you obtain ownership. We may use these CRD funds for any amounts you owe us under this Agreement. The Total Cost, above, includes all CRD funds which you must pay to acquire ownership. If you exercise your early purchase option ("EPO"), you must pay the EPO price plus any CRD paid. If you return the Property to us, we will refund both your RSD and CRD (less amounts we take to cure any defaults by you, including any damage to the Property beyond normal wear and tear) without interest.

**11. Reinstatement:** If you fail to make a timely lease renewal payment, this Agreement automatically terminates. However, you can reinstate it without losing any rights or options you have by making all payments due or by returning the Property to us within 7 days after the renewal date. If you return the Property to us within that time, you will have 21 days from the date of return to reinstate by making all payments due. If you have paid 2/3 or more of the Total Cost, above, you will have 30 days from the date of return to reinstate by making all payments due. If you reinstate, we will provide you with the same Property or property of comparable quality and condition.

**12. Additional Payments:** You may pay additional amounts in addition to your lease renewal payments at any time. You may use these funds when you exercise your early purchase option. If you return the Property, we will return any excess amounts you have paid less any amounts you still owe us within five business days after the return.

**13. Termination:** You may terminate this Agreement at any time with no penalty. To terminate, you must return the Property to us in good condition, fair wear and tear excepted, or make arrangement for its return and pay us all lease payments and other amounts you owe through the date of return. We may terminate this Agreement if you breach any of its terms, subject to your reinstatement rights, above. If we terminate, you must return the Property to us immediately or make arrangements for its return and pay us any amounts you still owe. Lease payments continue until you return the Property. If you return the Property promptly, we will refund your Security

# EXHIBIT A

Customer Signature    *VERONICA KENNY*    Date  11/14/2023    Document Origin: Copy

Deposit account less any amounts you still owe us. If you fail to do so, you must pay us our reasonable costs of retrieving the Property or for collecting the value of the property. You will be responsible for all collection costs incurred including but not limited to court costs, verification of employment costs up to $25.00, and reasonable attorney fees, as allowed by law.

**14. Offsets:** We may use any Security Deposit or other funds to pay any amounts you owe us under this Agreement or any other agreement you have with us.

**15. Communication:** You agree that we may contact you by any manual calling, pre-recorded/artificial voice message or automatic dialing system, or text message to any phone number you have given us or that you give us in the future, including cell phone numbers, even if you are charged for the call. This is for any purpose including, but not limited to, your account. You also agree that we may send you personal emails about your account at any email address you have given us or that you give us in the future. This is for any purposed including, but not limited to, your account and special offers and new products from us, our affiliate or partners. You may withdraw your consent to such contacts at any time by notifying us in writing of your desire to do so at our address above. You also agree to allow us to contact your creditors, employers, and landlord about you.

**16. Payment Authorization:** You hereby authorize us, acting directly or through a third-party, to initiate an electronic payment process to satisfy your promise to pay the amount on the lease set forth above and any other amounts owed to us including fees charged by the processor under the agreement to your checking account (your "account") at the bank ( the "bank"). The electronic payment may, at our discretion, take the form of an automated debit entry (also known as an ACH), debit card charge, remotely created check, remotely created payment order, demand draft, bank check, bank draft or similar payment device drawn against or tied to your account: or alternatively by a checking account debit card charge to a specific debit card number you have provided to us (collectively your "payment authorization"). This payment authorization allows us to obtain payment from your account for the full amount of the lease on or after the due date set forth above of at any time thereafter until your loan is repaid in full plus any fees (subject to any limitations imposed by law or regulation). You authorize lease renewal payments though either ACH draft or credit/debit card transactions plus any fees charged by the Processor. You also agree that we may rerun ACH returned items, including returned check fees and reinstatement fees, if any. This authorization will remain in effect until you revoke it in writing.

**17. Assignment:** You have no right to sell, transfer, assign, pawn, pledge, sub-lease or encumber the Property or this Agreement in any way. We may sell, transfer, or assign our rights in this Agreement without your consent.

**18. Location of Property:** You must keep the Property at the location listed above. You cannot move it without our written permission.

Initials: VK  _____  _____

**19. Arbitration Provision:**

**ARBITRATION AND WAIVER OF JURY TRIAL. PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. UNLESS YOU EXERCISE YOUR RIGHT TO OPT-OUT OF ARBITRATION IN THE MANNER DESCRIBED BELOW, YOU AGREE THAT ANY DISPUTE WILL BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO HAVE A JURY TRIAL, TO ENGAGE IN DISCOVERY (EXCEPT AS MAY BE PROVIDED FOR IN THE ARBITRATION RULES), AND TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS OR IN ANY CONSOLIDATED ARBITRATION PROCEEDING OR AS A PRIVATE ATTORNEY GENERAL. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO BE UNAVAILABLE IN ARBITRATION.**

Agreement to Arbitrate. You and we (defined below) agree that any Dispute (defined below) will be resolved by Arbitration. This agreement to arbitrate is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and the substantive law of the State of New Mexico without applying its choice-of-law rules).

What Arbitration Is. "Arbitration" is a means of having an independent third party resolve a Dispute. A "Dispute" is any claim or controversy of any kind between you and us. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to origination of your Rental-Purchase Agreement ("Agreement") and whether or not an Agreement is provided to you, based on any legal or equitable theory (contract, tort, or otherwise) and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon a federal or state constitution, statute, ordinance, regulation, or common law, and any issue concerning the validity, enforceability, or scope of this arbitration agreement.

# EXHIBIT A

Customer Signature  *VERONICA KENNY*  Date  11/14/2023  Document Origin: Copy

For purposes of this arbitration agreement, the terms "you" and "your" include any co-signer, co-obligor, or guarantor and also your heirs, guardian, personal representative, or trustee in bankruptcy. The terms "we," "our," and "us" mean Lessor and include Lessor's employees, officers, directors, members, managers, attorneys, affiliated companies, predecessors, and assigns, as well as Lessor's marketing, servicing, and collection representatives and agents.

How Arbitration Works. If a Dispute arises, the party asserting the claim or demand must initiate arbitration, provided you or we may first try to resolve the matter informally or through customary business methods, including collection activity. The party filing an arbitration must choose either of the following arbitration firms for initiating and pursuing an arbitration: the American Arbitration Association ("AAA") or JAMS, The Resolution Experts ("JAMS"). If the parties mutually agree, a private party, such as a retired judge, may serve as the arbitrator. If you claim you have a Dispute with us, but do not initiate an arbitration or select an arbitrator, we may do so. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

| American Arbitration Association | JAMS, The Resolution Experts |
|---|---|
| 120 Broadway, 21st Floor | 18881 Von Karman Ave., Suite 350 |
| New York, NY 10271 | Irvine, CA 92612 |
| Web site: www.adr.org | Web site: www.jamsadr.com |
| Telephone (800) 778-7879 | Telephone (949) 224-1810 or (800) 352-5267 |

The policies and procedures of the selected arbitration firm will apply provided such policies and procedures are consistent with this arbitration agreement. To the extent the arbitration firm's rules or procedures are different than the terms of this arbitration agreement, the terms of this arbitration agreement will apply.

What Arbitration Costs. No matter which party initiates the arbitration, we will advance or reimburse filing fees and other costs or fees of arbitration, provided each party will be initially responsible for its own attorneys' fees and related costs. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the arbitration.

Location of Arbitration. Unless you and we agree to a different location, the arbitration will be conducted within 30 miles of your then current mailing address.

Waiver of Rights. You are waiving your right to a jury trial, to have a court decide your Dispute, to participate in a class action lawsuit, and to certain discovery and other procedures that are available in a lawsuit. You and we agree that the arbitrator has no authority to conduct class-wide arbitration proceedings and is only authorized to resolve the individual Disputes between you and us. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide arbitration, if challenged, are to be determined solely by a court of competent jurisdiction and not by the AAA, JAMS, or an arbitrator. If such court refuses to enforce the waiver of class-wide arbitration, the Dispute will proceed in court and be decided by a judge, sitting without a jury, according to applicable court rules and procedures, and not as a class action lawsuit. The arbitrator has the ability to award all remedies available by statute, at law, or in equity to the prevailing party.

Applicable Law and Review of Arbitrator's Award. The arbitrator shall apply applicable federal and New Mexico substantive law and the terms of this Agreement. The arbitrator must apply the terms of this arbitration agreement, including without limitation the waiver of class-wide arbitration. The arbitrator shall make written findings and the arbitrator's award may be filed with any court having jurisdiction. The arbitration award shall be supported by substantial evidence and must be consistent with this Agreement and with applicable law, and if it is not, it may be set aside by a court. The parties shall have, in addition to the grounds referred to in the Federal Arbitration Act for vacating, modifying, or correcting an award, the right to judicial review of (a) whether the findings of fact rendered by the arbitrator are supported by substantial evidence and (b) whether the conclusions of law are erroneous under the substantive law of New Mexico and applicable federal law. Judgment confirming an award in such a proceeding may be entered only if a court determines that the award is supported by substantial evidence and is not based on legal error under the substantive law of New Mexico and applicable federal law.

Survival. This arbitration provision shall survive: (1) cancellation, payment, charge-off, or assignment of this Agreement; (2) the bankruptcy of any party; and (3) any transfer, sale, or assignment of this Agreement, or any amounts owed under this Agreement, to any other person or entity.

Right to Opt-Out. If you do not wish to agree to arbitrate all Disputes in accordance with the terms and conditions of this section, you must advise us in writing at our address above by either hand delivery or a letter postmarked no later than thirty (30) days following the date you enter into this Agreement. You may opt-out without affecting your application or status as a lessee at our address above.

Exception to Arbitration. Even though you and we agree to Arbitration, we still may use judicial (filing a lawsuit) or non-judicial relief to enforce our interest in the Property which is the subject of this Agreement, or to otherwise collect the balance due under the terms of the Agreement. We may commence and prosecute a lawsuit to recover possession of the Property which is the subject of this Agreement or to obtain a monetary judgment for the balance due under the terms of the Agreement, without waiving your right or our right to compel arbitration of any other dispute or remedy, including the filing of a counterclaim

# EXHIBIT A

Customer Signature   *VERONICA KENNY*           Date   11/14/2023                    Document Origin: Copy

by you in a lawsuit brought by us.

**20. Consumer Report:** As part of your application, you agreed that we may obtain a consumer report and/or consumer data about you. After signing this agreement, you authorize us to get a consumer report or consumer data that includes, but is not limited to, your creditworthiness or similar characteristics, social security verification, and any other public records or other information bearing on your credit standing or credit capacity.

**NOTICE TO THE LESSEE: (1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (2) YOU ARE ENTITLED TO A COPY OF AGREEMENT YOU SIGN.**

**BY SIGNING THIS LEASE: (1) YOU AGREE TO ALL ITS TERMS, INCLUDING THE EFT AUTHORIZATION AND ARBITRATION PROVISION; AND (2) YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.**

Lessee: *VERONICA KENNY*      Date: 11/14/2023

Lessee: _____ Date: 11/14/2023

Lessor: *Gary Allen*           Date: 11/14/2023

**Delivery Authorization**

Upon completion of signing this lease agreement as created, including any initial payment required, within the Okinus Hub with no changes made thereafter, Okinus, Inc. grants authorization to iFinance Furniture & More to deliver the merchandise indicated on this lease agreement to the customer indicated on this agreement. After the lessee(s) is(are) in satisfactory receipt of the merchandise, click the fund button in your retailer portal or fax Okinus, Inc. the "Receipt of Goods" verification signed by the customer(s) and iFinance Furniture & More will receive payment of the cash price less the initial payment taken.

**PAYMENT SCHEDULES**

| Payment No | Payment Date | Payment No | Payment Date | Payment No | Payment Date | Payment No | Payment Date |
|---|---|---|---|---|---|---|---|
| 1 | 12/04/2023 | 7 | 06/04/2024 | 13 | 12/04/2024 | 19 | 06/04/2025 |
| 2 | 01/04/2024 | 8 | 07/04/2024 | 14 | 01/04/2025 | 20 | 07/04/2025 |
| 3 | 02/04/2024 | 9 | 08/04/2024 | 15 | 02/04/2025 | 21 | 08/04/2025 |
| 4 | 03/04/2024 | 10 | 09/04/2024 | 16 | 03/04/2025 | 22 | 09/04/2025 |
| 5 | 04/04/2024 | 11 | 10/04/2024 | 17 | 04/04/2025 | 23 | 10/04/2025 |
| 6 | 05/04/2024 | 12 | 11/04/2024 | 18 | 05/04/2025 | 24 | 11/04/2025 |

# EXHIBIT A

Customer Signature  *VERONICA KENNY*      Date 11/14/2023      Document Origin: Copy